# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| ANCORA TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE LLC, <br><br> Defendant. | CIVIL ACTION NO. 6:21-cv-735-ADA <br><br> JURY TRIAL DEMANDED |

## DEFENDANT GOOGLE LLC'S OPPOSED MOTION TO TRANSFER

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 1 |
|  | A. | The Vast Majority of Google's Witnesses and Documents Are in the NDCA | 1 |
|  | B. | Ancora Has No Ties to the WDTX | 3 |
|  | C. | No Known Third Party Witnesses Are Located in the WDTX, But Numerous Third Party Witnesses Are in California and the NDCA | 3 |
|  | D. | Litigation History | 5 |
| III. | LEGAL STANDARD | | 5 |
| IV. | ARGUMENT | | 6 |
|  | A. | This Case Could Have Been Filed in the NDCA | 6 |
|  | B. | The Private Interest Factors Favor Transfer | 7 |
|  |  | 1. Cost of Attendance for Willing Witnesses Favors Transfer | 7 |
|  |  | 2. The Relative Ease of Access to Sources of Proof Favors Transfer | 10 |
|  |  | 3. The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer | 11 |
|  |  | 4. The Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Weigh in Favor of Transfer | 11 |
|  | C. | The Public Interest Factors Also Favor Transfer | 12 |
|  |  | 1. Administrative Difficulties Flowing from Court Congestion Favor Transfer | 12 |
|  |  | 2. Local Interest Favors Transfer | 12 |
|  |  | 3. The Courts' Familiarity with the Law and the Avoidance of Conflicts Concerning the Application of Foreign Law Factors Favor Transfer | 13 |
| V. | CONCLUSION | | 13 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Acer Am. Corp.*,
 626 F.3d 1252 (Fed. Cir. 2010)..............................................................................................8, 12

*Adaptix, Inc. v. HTC Corp.*,
 937 F. Supp. 2d 867 (E.D. Tex. 2013)........................................................................................11

*Ancora Technologies, Inc. v. Apple Inc.*,
 No. 10-10045-AG, 2011 WL 13157060 (C.D. Cal. Dec. 12, 2011)............................................3

*Ancora Techs., Inc. v. Apple, Inc.*,
 No. 2:10-cv-10045-AG-MLGx, Dkt. 55 (C.D. Cal. Nov. 21, 2011) ......................................3, 4

*Correct Transmission LLC v. ADTRAN, Inc.*,
 No. 6:20-CV-00669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) ............................11

*Cub Club Inv., LLC v. Apple, Inc.*,
 No. 6:20-cv-00856-ADA, Dkt. 28 (W.D. Tex. Sept. 7, 2021) ......................................... passim

*DataQuill, Ltd. v. Apple Inc.*,
 No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ....................................7

*In re Genentech, Inc.*,
 566 F.3d 1338 (Fed. Cir. 2009)......................................................................................7, 10, 12

*In re Google LLC*,
 No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .......................................... passim

*In re Google LLC*,
 No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...............................................9, 10

*In re HP, Inc.*,
 No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ....................................................7

*In re Juniper Networks, Inc.*,
 14 F.4th 1313 (Fed. Cir. 2021) ...............................................................................6, 9, 12, 13

*In re Nintendo Co.*,
 589 F.3d 1194 (Fed. Cir. 2009)...................................................................................................6

*Parus Holdings Inc. v. LG Elecs. Inc.*,
 No. 6:19-cv-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) ............................10

*In re Volkswagen AG*,
 371 F.3d 201 (5th Cir. 2004) ......................................................................................................9

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ........................................................................................ *passim*

*Wet Sounds, Inc. v. Audio Formz, LLC*,
   No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017) .............................. 9, 10

**Statutes**

28 U.S.C. § 1400(b) .............................................................................................................. 6

28 U.S.C. § 1404(a) ...................................................................................................... 1, 5, 8

**I.      INTRODUCTION**

Ancora Technologies Inc. filed this case in the Western District of Texas even though there are no relevant witnesses or evidence here. In contrast, a substantial amount of evidence and witnesses is located in the Northern District of California where Google LLC has been headquartered since its founding in 1998. In addition, Ancora concedes that many of its witnesses and much of its evidence are located in California. Thus, considering the convenience of the witnesses leads to only one conclusion: NDCA is significantly more convenient than this district. Nothing favors keeping this case here. Therefore, transfer of this case to the NDCA pursuant to 28 U.S.C. § 1404(a) is appropriate.

**II.     STATEMENT OF FACTS**

      **A.     The Vast Majority of Google's Witnesses and Documents Are in the NDCA**

Google's Mountain View headquarters, which includes offices in neighboring Sunnyvale, (collectively referred to as "Mountain View") is the strategic center of Google's business. Declaration of Google Senior Legal Project Manager ("Project Manager Decl.") ¶ 2. As of June 2021, the Mountain View headquarters employed approximately 39,887 employees, which is approximately 45.3% of Google's U.S. employees. *Id*. As of June 2021, Google also had approximately 10,932 other employees in offices in San Francisco, California and other smaller offices also within the NDCA. *Id*. As of June 2021, approximately 57.7% of Google's 88,023 total U.S. employees, including engineers, product managers, marketers, executives, and staff were employed out of Google's offices located in the NDCA. *Id*. Although Google has an office in Austin, Texas, it houses only a very small fraction of Google's U.S. employees (2%). *Id*. ¶ 3. And neither Google nor Ancora have identified any employees in Texas who are knowledgeable about the accused functionalities.

1

Ancora has accused certain Google products[1], to which Google allegedly sent an over-the-air ("OTA") update, of infringement. Declaration of Robert W. Unikel ("Unikel Decl.") ¶ 2. The vast majority of engineers knowledgeable about this feature are based in or near the NDCA, including the following (*see* Project Manager Decl. ¶ 6):

- An engineer who is knowledgeable about OTA updates for Cast OS is based in Mountain View. The other individuals who work on this feature with this engineer are based in Mountain View with some engineers being based in East Asia.

- An engineer who is knowledgeable about Android OTA updates is based in Mountain View. The other individuals who work on this feature with this engineer are based in Mountain View and Cambridge, Massachusetts.

- An engineer who is knowledgeable about OTA updates on certain Nest Thermostat devices is based in Mountain View. The other individuals who work on this feature with this engineer are based in Mountain View, Palo Alto (California), and Japan.

- An engineer who is knowledgeable about OTA updates for Chrome OS is based in Mountain View. The other individuals who work on this feature with this engineer are based in Mountain View and Boulder, Colorado.

- An engineer who is knowledgeable about Android verified boot, which is also accused of infringement, is based in Cambridge, Massachusetts.

Documents can be found in the same locations. As a matter of Google practice, documents about its products and services are normally created and maintained by the employees working on those products and services. *Id.* ¶ 4.

---

[1] Google's identification of the accused products is based on Google's current understanding of Ancora's infringement contentions.

### B.  Ancora Has No Ties to the WDTX

Miki Mullor, one of the inventors of the asserted patent (Ex. A), is the Founder and former CTO and CEO of Ancora. Exs. B–C. Mullor developed the technology underlying the patent in California. *Ancora Technologies, Inc. v. Apple Inc.*, No. 10-10045-AG, 2011 WL 13157060, at *1 (C.D. Cal. Dec. 12, 2011). Mullor is currently Ancora's president. Dkt. 1 ¶ 14. Ancora is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at 23977 S.E. 10th Street, Sammamish, Washington 98075. *Id.* ¶ 2. Mullor resides at the same address listed as Ancora's principal place of business, in Washington. Ex. D. That "business" appears to be a residence. Ex. E. This is consistent with findings in previous Ancora litigations that "Ancora is 'really a one-person company' and that one person is Mullor." *Ancora Techs.*, 2011 WL 13157060, at *1.

Google is unaware of any connections whatsoever between Ancora and the WDTX.

### C.  No Known Third Party Witnesses Are Located in the WDTX, But Numerous Third Party Witnesses Are in California and the NDCA

None of the presently known third-party witnesses reside in the WDTX. But many reside in the NDCA or within California. In fact, Ancora conceded in a prior litigation that California houses a large number of relevant witnesses. Ancora has stated:

> Ancora also had business dealings and/or discussions with several California based companies including Electronic Arts, MicroMedia, Macrovision, BAE Systems, Phoenix Technologies, Active Card and the Warner Brothers Music Group located in Hollywood.[] These dealings all centered on the technology of the '941 patent developed in [the CDCA]. . . . Ancora identifies a litany of relevant witnesses located in [the CDCA]. Alberto Saavedra, the president of Ancora, resides in the Los Angeles area and maintains the Sherman Oaks address. [] Dan Weil also resides in the greater Los Angeles area, namely, Calabasas.[] The company that owned the '941 patent before Ancora, [Beeble] Inc., was also located in Irvine and had a place of business in [the CDCA]. [] Those individuals with [Beeble] that were involved with the technology of the '941 patent also reside in the Los Angeles area including: Blair Bryant (Newport Beach),

3

> Michael Sentovich (Newport Beach), Fred Fourcher (Newport Beach), Stuart Rose (Tustin). []Ancora also executed an alliance agreement with American Megatrends concerning the '941 patent which clearly lists Ancora's business address in the Central District. [] Other individuals have also worked with Beeble and/or Ancora on technical development in [the CDCA]: Dan Bright, Mark Andre, and Jeff Lorenzini.[]

*Ancora Techs., Inc. v. Apple, Inc.*, No. 2:10-cv-10045-AG-MLGx, Dkt. 55 at 4–5 (C.D. Cal. Nov. 21, 2011) (Ex. F). Based on publicly available information, none of the companies listed by Ancora appear to be based in Texas. *See* Exs. G–L, P. Instead, many of them now appear to be based in the NDCA, including Electronic Arts Inc. (Redwood City), MicroMedia Systems, Inc. (Sunnyvale), Macrovision Corp. (San Jose), and Phoenix Technologies (Campbell). Exs. G–L, P. Beeble, Inc. and Warner Brothers Music Group could not be located by Google. Unikel Decl. ¶ 15. The above-listed individuals each appear to still reside in the Central District of California or their current location could not be confirmed. *See* Exs. M–O; Unikel Decl. ¶ 20.

At least one prior artist resides within the NDCA, while none reside in the WDTX. For example, one IPR has been instituted based on three prior art references: U.S. Patent Nos. 4,658,093 ("the '093 Patent"), 5,892,906 ("the '906 Patent"), and 5,933,498 ("the '498 Patent"). Unikel Decl. ¶ 21. Martin E. Hellman, the sole named inventor of the '093 Patent, resides in Stanford, California. Exs. Q–R. The inventors of the '906 Patent live in various locations, but none reside in the WDTX: Joseph M. Kulinets resides in Massachusetts and Laszlo Elteto resides in Irvine (California). Exs. S–U. Wayne Chou and Joseph LaRussa's locations could not be confirmed, but based on the face of the patent they may reside in Connecticut and New York respectively. Ex. S; Unikel Decl. ¶ 27. Inventors of the '498 Patent also reside outside of both NDCA and the WDTX. Marshall D. Abrams resides in Maryland. Ex. W. Paul B. Schneck's location could not be confirmed, but based on the face of the patent he may reside in Maryland. Ex. V; Unikel Decl. ¶ 28.

4

Last, the second inventor of the asserted patent appears to reside in Israel. Exs. A, X.

### D. Litigation History

Ancora has asserted the patent against numerous defendants in different forums including the CDCA, NDCA, WDTX, District of Delaware, Western District of Washington, and briefly in the Eastern District of Texas before it was transferred to California. *See* Unikel Decl. ¶ 33. Each district except the EDTX undertook substantive consideration and analysis of the asserted patent. *Id*. And three courts have construed the claims of the patent: the NDCA, WDTX, and CDCA. *Id*. ¶ 34.

There are three other active litigations regarding the asserted patent. This includes one case against VIZIO, Inc., which Ancora agreed to transfer from the WDTX to the CDCA. *See* No. 6:21-cv-00739-ADA, Dkt. 19 (W.D. Tex. Oct. 28, 2021). The second case is against Roku, Inc., which Roku has moved to transfer from this court to the NDCA. *See* No. 6:21-cv-00737-ADA, Dkt. 18 (W.D. Tex. Oct. 5, 2021). Finally, the third case is against Nintendo Co., Ltd., and Nintendo has moved to transfer that case from this district to the Western District of Washington. *See* No. 6:21-cv-00738, Dkt. 29 (W.D. Tex. Nov. 4, 2021).

## III. LEGAL STANDARD

To evaluate transfer under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*") (citation omitted). If so, the court weighs eight private and public interest factors:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. . . . [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interest decided at home; [7] the familiarity of the forum with the law that will govern the

5

> case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (citation omitted). "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citation omitted).

## IV.   ARGUMENT

The center of gravity for this case is in the NDCA, not the WDTX. This case should therefore be transferred. *See In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021). Indeed, the majority of witnesses and evidence are located in or around the NDCA. Even if the Court finds all other factors neutral, transfer is still appropriate. Indeed, in a recent case, this Court transferred a case to the NDCA where the location of witnesses and evidence favored transfer and the other factors were overall neutral. *See Cub Club Inv., LLC v. Apple, Inc.*, No. 6:20-cv-00856-ADA, Dkt. 28 at 13 (W.D. Tex. Sept. 7, 2021) (Ex. Y). The Federal Circuit, too, has confirmed that transfer is warranted where the majority of witnesses and evidence are located in the transferee forum, even where at least some evidence is in the transferor forum. *See In re Google LLC*, 2021 WL 4427899, at *7; *see also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1323 (Fed. Cir. 2021). This is an even clearer case for transfer as no witnesses or evidence are located in the WDTX.

### A.   This Case Could Have Been Filed in the NDCA

The threshold requirement for a transfer of venue is met here: Ancora could have brought this action in the NDCA, where Google is headquartered. *See* 28 U.S.C. § 1400(b).

### B. The Private Interest Factors Favor Transfer

#### 1. Cost of Attendance for Willing Witnesses Favors Transfer

"The convenience of the witnesses is probably the single most important factor in [the] transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (internal citation omitted). Here, the expected witnesses and their expenses for participating in this case demonstrate that this dispute belongs in the NDCA.

Google established its headquarters in the NDCA at its founding, and remains there to this day. Project Manager Decl. ¶ 2. Google's key employees, including those with technical knowledge about the accused features and products, are primarily based in or nearer to the NDCA. The only exception are some engineers located in Massachusetts and Boulder, Colorado. *Id*. ¶ 6. All of Google's key party witnesses have direct experience with the accused functionalities and will likely have information relevant to noninfringement, the state of the art, and alleged damages in this case. *See id*. "While it is true that the witnesses in the Northern District of California are largely affiliated with the parties, that does not negate the inconvenience and cost to those individuals to travel a significant distance to testify." *In re Google LLC*, 2021 WL 4427899, at *4.

Google has an Austin office, but none of the Google employees with relevant information are based there. Project Manager Decl. ¶¶ 6–7. A party's presence in the transferor district does not affect the assessment of this factor if that presence is not relevant to the case. *See, e.g.*, *In re HP, Inc.*, No. 2018-149, 2018 WL 4692486, at *1–2 (Fed. Cir. Sept. 25, 2018) (finding transfer to the NDCA appropriate even though defendant "maintain[ed] an office" within the transferor district). Indeed, this Court has granted a motion to transfer, notwithstanding a defendant's Austin office (housing 7,000 employees) where "there is no evidence . . . that demonstrates a single employee from the Austin campus has knowledge and/or documents relevant to this case." *Cub Club Inv.*, No. 6:20-cv-000856-ADA, Dkt. 28 at 8 (Ex. Y); *see also DataQuill, Ltd. v. Apple Inc.*,

7

No. A-13-CA-706-SS, 2014 WL 2722201, at *1, 3 (W.D. Tex. June 13, 2014) (granting transfer to the NDCA even though defendant "employs some 3,500 people" in this district where no witnesses were identified in the WDTX). Accordingly, Google's presence in Austin does not affect transfer because that presence is irrelevant to the patent claims in this case.

Ancora also does not appear to have any relevant witnesses in the WDTX. *See supra* Section II.B–C. In fact, most witnesses identified by Ancora in earlier actions reside in California or Washington, closer to the NDCA than the WDTX. *Id*.

Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (citation omitted). "[I]t is an 'obvious conclusion' that it is more convenient for witnesses to testify at home[.]" *Id*. (citation omitted). Distant witnesses "not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Id*.

Here, both the time and the distance the witnesses would need to travel favor transfer. The majority of the affected Google and Ancora witnesses must travel about 1,400 miles from California (or farther) to Waco, Texas to testify, resulting in costly and unnecessary travel expenses, missed work, and personal disruptions. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). Only some of Google's employees who may have relevant information are located closer in distance to Waco. These witnesses are in Colorado and Massachusetts. Project Manager Decl. ¶ 6. But it would take about the same amount of time for them to travel to Waco as to San Francisco, if not longer, because there is no major airport in Waco. Exs. Z–CC. "In this regard, time is a more important metric than distance" because "[t]here is no major airport in the

Waco Division of the Western District of Texas[.]" *In re Google LLC*, 2021 WL 4427899, at *4. Ancora's known party witness (Mullor) is located in Washington, closer to the NDCA.

Litigating this case in the San Francisco Bay Area would allow many of the witnesses to commute to trial or hearings from home or work within the same day. "[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916 at *3 (W.D. Tex. Oct. 11, 2017) (*quoting In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004)).

Because the majority of the material witnesses reside within the NDCA or closer to the NDCA, and no known witnesses reside in the WDTX, this most important factor overwhelmingly favors transfer. The Federal Circuit's cases "have emphasized that when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer." *In re Google LLC*, 2021 WL 4427899, at *4; *see also In re Juniper Networks*, 14 F.4th at 1319 (ordering transfer to the NDCA where defendant identified eleven potential party witnesses in the NDCA and plaintiff identified only one party witness in the WDTX). Indeed, the Federal Circuit recently noted that this court correctly found this factor favored transfer where, similar to this case, "the Northern District of California would be more convenient for Google employees knowledgeable about the design and development of the accused functionalities as well as [the plaintiff's] founder and CFO." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). The same result is warranted here.

### 2. The Relative Ease of Access to Sources of Proof Favors Transfer

The fact that documents may be stored electronically does not undermine the import of their location because "the Fifth Circuit [has] clarified that despite technological advances that make the physical location of documents less significant, the location of sources of proof remains a 'meaningful factor in the analysis.'" *Wet Sounds*, 2017 WL 4547916, at *2 (quoting *Volkswagen II*, 545 F.3d at 316). And "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345 (citation omitted). Documents about Google's products and services that are in Google's possession are normally created and maintained by the employees working on those products and services. Project Manager Decl. ¶ 4. Because the employees with knowledge relevant to this litigation are based primarily in the NDCA, the relevant documents in this case would likely be created and maintained in the NDCA. *See In re Google LLC*, 2021 WL 5292267, at *2 (stating the district court erred by "analyzing only the location of servers where documents are stored, rather than also considering the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval."); *In re Google LLC*, 2021 WL 4427899, at *6. Meanwhile, there is no indication that any relevant evidence is created or maintained in the WDTX. Therefore, the geographic locus of evidence also favors transfer to California.

This Court has found that this factor favored transfer to the NDCA where the movant asserted that "Google researches, designs, develops, and tests Google assistant in NDCA." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-00432-ADA, 2020 WL 4905809, at *3 (W.D. Tex. Aug. 20, 2020). The Court should similarly do so here. As in *Cub Club*, this factor weighs in favor of transfer given "(1) that [Google] resides in the NDCA and (2) that the accused features were

10

apparently developed at [Google's] offices in California." *Cub Club Inv.*, No. 6:20-cv-000856-ADA, Dkt. 28 at 6 (Ex. Y).

Moreover, Ancora's operations are based in Washington, closer to the NDCA than the WDTX, and its evidence is likely located there as well.

### 3. The Availability of Compulsory Process to Secure the Attendance of Witnesses Favors Transfer

"Transfer is favored" where, as here, a transferee district like the NDCA "has absolute subpoena power over a greater number of non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). There are no known third party witnesses in the WDTX. Meanwhile, there are at least one prior artist and four companies that Ancora claims are relevant to this litigation located in the NDCA. This factor therefore favors transfer. *See In re Google LLC*, 2021 WL 4427899, at *1, 6–7 (finding that weight should be given to the location of Google's prior art witnesses, noting Google's history in "several previous cases in which it had called such witnesses to testify during trial").

### 4. The Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive Weigh in Favor of Transfer

"[T]his Court has previously held that the last private interest factor favors transfer when most witnesses are present in the transferee forum and the plaintiff has no presence in the Western District." *Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-CV-00669-ADA, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021) (citation omitted). The location of the majority of likely Google witnesses, the location of the prior artist, and the complete lack of witnesses in the WDTX make this factor favor transfer.

That this patent has been litigated in various forums is overall neutral to this analysis. Both the NDCA and WDTX have overseen cases regarding this patent, and thus both are familiar with the underlying technologies.

11

### C. The Public Interest Factors Also Favor Transfer

As with the private interest factors, the public interest factors favor transfer. Even if the Court should find the public interest factors neutral, a transfer is warranted because the private interest factors heavily favor transfer. *See Cub Club Inv.*, No. 6:20-cv-000856-ADA, Dkt. 28 at 9–13 (Ex. Y) (transferring a case to the NDCA where the private interest factors related to the location of evidence and witnesses favored transfer and the public interest factors were neutral).

#### 1. Administrative Difficulties Flowing from Court Congestion Favor Transfer

This factor favors transfer. This Court is more "congested" in that it has far more open patent cases (830 cases) than the NDCA (267 cases). Exs. DD–EE. Moreover, the median times to trial are roughly the same (about 20.9 months in this Court versus 25 months in the NDCA). *Id*. Although this Court's default schedule could lead to a trial date sooner than the average time to trial in the NDCA, the Federal Circuit has made clear that "it is improper to assess the court congestion factor" based on a scheduling order. *In re Juniper Networks,* 14 F.4th at 1322. Even if the Court does find that its default schedule tilts this factor against transfer, the Federal Circuit has noted that this factor "appears to be the most speculative" and "cannot outweigh all of the other factors" in the transfer analysis. *Genentech*, 566 F.3d at 1347.

#### 2. Local Interest Favors Transfer

The NDCA has a strong local interest in this dispute: Google was founded in the NDCA, where it still maintains its headquarters, and where most of its engineers knowledgeable about the accused features are based. Project Manager Decl. ¶¶ 2, 6. This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit[.]" *In re Acer,* 626 F.3d at 1256; *see also Volkswagen II*, 545 F.3d at 318 (explaining that this factor pertains to a forum's "connections with the events that gave rise to th[e] suit"). In contrast to the significant

12

connection between this litigation and the NDCA, there is no meaningful connection to the WDTX. None of the relevant Google employees with responsibilities related to the accused functionalities are based in Texas, and Google's presence in Austin with respect to other products and technologies does not demonstrate a local interest in this case. "Because the accused products were designed and developed in the transferee venue and are not related to Google's presence in Texas. . . the local interest factor should [be] weighted strongly in favor of transfer." *In re Google LLC*, 2021 WL 4427899, at *6.

Ancora's connection to WDTX is nonexistent, other than the fact that it has litigated in this district (which is also true of the NDCA). *In re Juniper Networks*, 14 F.4th at 1320–21("Juniper's general presence in the Western District of Texas is not enough to establish a local interest in that district comparable to that of the Northern District of California. . . . Moreover, it appears that the relationship between the Texas forum and Brazos is merely the product of pursuing litigation in a preferred forum and is entitled to little weight."). Therefore, the local interest factor favors transfer.

### 3. The Courts' Familiarity with the Law and the Avoidance of Conflicts Concerning the Application of Foreign Law Factors Favor Transfer

The courts in the WDTX and NDCA are both familiar and experienced with patent litigation issues and, in particular, the issues relevant to this case. This factor is therefore neutral.

## V. CONCLUSION

Nearly every single factor in this case favors transfer to the NDCA and the remaining two are neutral. The NDCA is clearly the more convenient forum. It is where the vast majority of Google's evidence and witnesses are located. It is also closer to the majority of witnesses and evidence identified by Ancora. In contrast, this lawsuit has no witnesses, evidence, or any other connection to this District. Under these facts, transfer is warranted.

DATED:  November 23, 2021                    Respectfully Submitted,

/s/ *Brian C. Banner*
Brian C. Banner (TX Bar No. 24059416)
bbanner@sgbfirm.com
Truman H. Fenton (TX Bar No. 24059742)
tfenton@sgbfirm.com
Darryl J. Adams (TX Bar No. 00796101)
dadams@sgbfirm.com
SLAYDEN GRUBERT BEARD PLLC
401 Congress Ave., Suite 1650
Austin, TX 78701
Telephone: (512) 402-3550
Facsimile: (512) 402-6865

Robert W. Unikel (*Pro Hac Vice*)
robertunikel@paulhastings.com
PAUL HASTINGS LLP
71 South Wacker Drive, 45th Floor
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Elizabeth Brann (*Pro Hac Vice)*
elizabethbrann@paulhastings.com
Ariell N. Bratton (*Pro Hac Vice*)
ariellbratton@paulhastings.com
Sachin Bhatmuley (*Pro Hac Vice*)
sachinbhatmuley@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Robert R. Laurenzi (*Pro Hac Vice*)
robertlaurenzi@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

Joshua Yin (*Pro Hac Vice*)
joshuayin@paulhastings.com
PAUL HASTINGS LLP

1117 S. California Avenue  
Palo Alto, CA 94304  
Telephone: (650) 320-1800  
Facsimile: (650) 320-1900  

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for the parties to this motion conferred in a good-faith effort on November 22, 2021 to resolve the matter presented herein. Counsel for Ancora Technologies, Inc. opposes the instant motion.

*/s/ Brian C. Banner*  
Brian C. Banner

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of November, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. I further certify that on this same day, I served the SEALED Declaration of Google Senior Legal Project Manager (cited herein and filed UNDER SEAL concurrently herewith) on all counsel of record at the addresses below:

Charles L. Ainsworth (Email: charley@pbatyler.com)

Lexie G. White (Email: lwhite@susmangodfrey.com)

Robert Christopher Bunt (Email: rcbunt@pbatyler.com)

Steven M. Seigel (Email: sseigel@susmangodfrey.com)

Andres Healy (Email: ahealy@susmangodfrey.com)

                                                      */s/ Brian C. Banner*
                                                      Brian C. Banner